# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03045-NYW

BEATRICE GAIL JAMES,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This action comes before the court pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 for review of the Commissioner of Social Security's final decision denying Plaintiff Beatrice Gail James' application for Disability Insurance Benefits ("DIB"). Pursuant to the Order of Reference dated July 9, 2015, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). *See* [#19]. The court has carefully considered the Complaint [#1, filed Nov. 11, 2014], Defendant's Answer [#9, filed Mar. 13, 2015], Plaintiff's Opening Brief [#13, filed Apr. 22, 2015], Defendant's Response Brief [#14, filed May 20, 2015], Plaintiff's Reply Brief [#15, filed June 9, 2015], the entire case file, the administrative record, and applicable case law. For the following reasons, I **AFFIRM** the Commissioner's final decision.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed an application for DIB under Title II of the Act on March 29, 2012. [#10-5 at 89].[1] At the time of the application, Ms. James was 56 years old, with a high school education. [#10-6 at 101, 106]. As the basis for her disability claim, she states that her ability to work is limited by bulging discs in her neck and back, chronic pain, and asthma. [#10-6 at 105]. Ms. James states in her application that her disability began in 2005, at which time she quit her job and began helping with her husband's business. [#10-6 at 90]. She eventually stopped working altogether because they lost their business and she can no longer work at any other type of job, especially physical jobs. [#10-6 at 101, 105].

After denial of Ms. James' application, a hearing was held before an Administrative Law Judge ("ALJ") on May 13, 2013. [#10-2 at 20]. The ALJ issued a hearing decision on June 7, 2013, which denied the application for disability benefits at step two of the five-step sequence for determining disability. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing steps).

First, the ALJ determined that Ms. James last met insured status requirements of the Social Security Act on December 31, 2010 ("the date last insured"). [#10-2 at 14]. The ALJ then determined that Ms. James did not engage in substantial gainful activity between the alleged onset date of June 15, 2009, through the date last insured of December 31, 2010 ("insured period"). [#10-2 at 14]. Next, the ALJ found that during the insured period, Ms. James had

---

[1] This Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file. For the Administrative Record, the court then refers to the page number associated with the Record, which is found in the bottom right-hand corner of the page. For documents outside of the Administrative Record, the court refers to the page number assigned in the top header by the ECF system.

three medically determinable impairments: unspecified back pain, unspecified neck pain, and asthma. [#10-2 at 14]. The ALJ then determined at step two that Ms. James did not have any impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; and therefore Ms. James did not have a severe impairment or combination of impairments. [#10-2 at 14]. On this basis, the ALJ concluded that Ms. James was not under a disability, as defined in the Social Security Act, at any time during the insured period between June 15, 2009 and December 31, 2010. [#10-2 at 18].

On September 25, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby rendering the ALJ's decision the final decision of the Commissioner. *See* [#10-2 at 1]; 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993). Plaintiff filed this action on November 11, 2014. *See* [#1]. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.  Standard of Review

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## II.     Social Security Disability Appeal Process

An individual is eligible for DIB benefits under the Act during the period of time she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. §§ 416(i), 423(a)(1). An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

In order to receive benefits, a claimant must establish her disability prior to the date the claimant last met the earnings requirements of the Social Security Act (Act), *i.e.*, the date last insured. 42 U.S.C. §§ 401-433. *See Adams v. Chater*, 93 F.3d 712, 714 (10th Cir. 1996); *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750. "Step one requires the agency to determine whether a claimant is 'presently engaged in substantial gainful activity.'" *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). Step two requires the agency to consider whether a claimant has "a medically severe impairment or impairments." *Allen*, 357 F.3d at 1142. "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). At step three, the ALJ considers whether a claimant's medically severe impairments "meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). If the claimant's impairments are not equivalent to a listed impairment, at step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity (RFC) and compare the RFC to the claimant's past relevant work. The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120. The ALJ may rely upon the testimony of a vocational expert to satisfy his burden at

step five, so long as the question posed to the vocational expert accurately portrays Plaintiff's limitations as supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

## ANALYSIS

Ms. James objects to the ALJ's decision on several grounds. First, the ALJ erred when he found that none of Plaintiff's medically determinable impairments were "severe," and that none of the errors related to this finding were "harmless." [#13 at 2]. Second, Ms. James argues that the ALJ erred in failing to adequately develop the record. [#13 at 2].

**I.    The ALJ's Finding That None of Ms. James' Impairments Were "Severe"**

Plaintiff argues that the ALJ erred in finding that she did not have a severe impairment or combination of impairments at step two of the evaluation process. She argues that the ALJ's finding is not supported by substantial evidence because he failed to adequately weight the medical evidence in the record.

"At step two, it is the claimant's burden to demonstrate an impairment, or a combination of impairments, that significantly limit her ability to do basic work activities." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). In order to meet this burden, a claimant must furnish evidence demonstrating that: (a) she had one or more "medically determinable" physical or mental impairments; (b) those impairments, either individually or in combination, were "severe"; and (c) those impairments had or could be expected to last for a continuous period of at least 12 months. See 20 C.F.R. §§ 404.1505, 404.1508, 404.1520(a)(4)(ii), 404.1520(c), 404.1521. "[W]hile the showing a claimant must make at step two is de minimis, a showing of the mere presence of a condition is

not sufficient." *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (citing *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003).

The court turns first to the medical evidence from before or during the insured period in which Ms. James must establish that she had an impairment or combination of impairments that limited her ability to do work activities. *See* 20 C.F.R. § 404.131; *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (the ALJ should consider evidence from an earlier time period as it may be relevant to whether the claimant is disabled); *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of claimant's condition during the relevant time period). The evidence in the record includes an August 20, 2008 appointment with Dr. Joseph Corona, a treating physician. [#10-7 at 155]. Dr. Corona noted that Ms. James "comes in c/o neck pain and actually shoulder pain and actually upper back pain." [#10-7 at 155]. Dr. Corona stated that Ms. James has had disc disease in the past, but does not recall any specific injury. [#10-7 at 155]. An examination revealed tenderness in the C5-C6 region; however, DTRs, motor and sensory are equal except for a little bit of extensor weakness on the right side. [#10-7 at 155]. Dr. Corona prescribed Parafon Forte DSC and advised Ms. James to apply local heat to the back. [#10-7 at 155]. He further advised her to call if symptoms persist and noted that she may need x-rays or repeat MRI. [#10-7 at 155]. The record reflects that Ms. James did not contact Dr. Corona in the near term for any issue, including x-rays or a repeat MRI.

Instead, Ms. James visited Dr. Corona again seven months later in March 2009. [#10-7 at 154]. At that time, back pain was not listed as an "active problem," and Parafon Forte DSC was not listed as one of her current medications. [#10-7 at 154]. Dr. Corona's notes state that Ms. James wanted to stop smoking, has a history of asthma, and would like to switch asthma medications from Asmacort to Advair. [#10-7 at 154]. On May 9, 2009, Ms. James had an MRI which showed Grade I anteriolisthesis L5 on S1 with features suggesting probably lytic spondylolisthesis and mild disc space narrowing L4-5. [#10-7 at 268]. Ms. James then waited another three months and visited with Dr. Corona on June 8, 2009, at which time the doctor noted that Ms. James was seen in Urgent Care for back pain and was put on cyclobenzaprine and Vicodin for pain; however, Dr. Corona noted that "[s]he is doing well now." [#10-7 at 152-153].

On January 3, 2011, four days after the date that Ms. James was last insured for the purposes of DIB, she visited Dr. Corona with a chief complaint of back pain. [#10-7 at 150]. Dr. Corona noted that Ms. James "states she has had upper back pain for a number of years" and that Ms. James "has tried over-the-counter ibuprofen and aspirin with some relief." [#10-7 at 150]. Dr. Corona also took note that Ms. James has taken some Flexeril in the past with "some relief." [#10-7 at 150]. Dr. Corona observed some tenderness from T1 to T12 and in the paraspinous muscles bilaterally. [#10-7 at 151]. He prescribed Chlorzoxazone. [#10-7 at 151]. Dr. Corona then concluded that "[w]ithout evidence of radiculopathy, will treat with Parafon forte 3 times daily and local heat. We'll see how she does and if symptoms persist consider x-rays." [#10-7 at 151].

The ALJ concluded that the record does not establish that Ms. James' impairments cause more than a minimal limitation in her ability to perform basic work activities. [#10-2 at 17].

The ALJ noted that Ms. James' subjective complaints and alleged limitations were not consistent with the objective examination reports prior to and during the relevant insured period. [#10-2 at 17]. The ALJ also noted Plaintiff's normal physical examinations in June 2009 and May 2010, as well as the fact that in June 2009 Dr. Corona stated that she was doing well regarding her back pain after starting Cyclobenzaprine and Vicodin. [#10-2 at 17]. The ALJ concluded that based on his review, the record did not establish that Ms. James' impairments caused more than a minimal limitation in her ability to perform basic work activities. [*Id.*].

This court agrees and finds that the ALJ's opinion regarding the record evidence before and during the relevant insured period is supported by substantial evidence. Indeed, for the insured period, the record reflects only mild abnormalities that were controlled with pain medication; Ms. James even stated that she was doing fine controlling her pain with medication and heat. *Cf. Pickup v. Colvin*, 606 F. App'x 430, 433-34 (10th Cir. 2015) ("If medication effectively reduces the operative symptoms, that fact can weigh against the claimant.") (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1171 (10th Cir. 2012) (ALJ did not err in "reject[ing] [the claimant's] complaint of disabling pain because of lack of intensity" where "medical reports reveal[ed] that medications have been relatively effective, when taken as prescribed"); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2002)). And there is no indication anywhere in the records from the insured period to suggest that Ms. James' back pain caused more than a minimal limitation in her ability to perform basic work activities.

This court also finds no error by the ALJ in relying primarily on the medical records from the relevant time period of the alleged disability onset date, June 15, 2009, to the date last

insured, December 31, 2010, because Ms. James must establish that she was disabled prior to the expiration of her insured status. *See* 20 C.F.R. § 404.131; *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (the ALJ should consider evidence from an earlier time period as it may be relevant to whether the claimant is disabled); *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (noting that evidence beyond the date last insured may be considered to the extent it sheds light on the nature and severity of claimant's condition during the relevant time period). Nevertheless, even considering the medical evidence after the insured period, which the ALJ did in his opinion, the court finds no error in the ALJ's conclusion that such evidence does not establish the severity of Ms. James' impairments ***during*** the relevant time period as claimed.

The medical evidence after the date last insured includes several appointments that Ms. James attended to address a problem with her left hip: (1) a May 17, 2011 appointment with Dr. Corona in which Ms. James stated that she had been having left-sided hip pain for over a month [#10-7 at 148]; (2) a June 6, 2011 appointment with Dr. Corona in which Ms. James stated that the hip pain was still significant when she walked and that she would like to try a steroid injection [#10-7 at 146]; and (3) a September 26, 2011 appointment with Dr. Corona which Ms. James attended to receive a second injection in her left hip [#10-7 at 144-45]. The court notes that there is no indication from any of the information in the record that Ms. James suffered from a hip injury prior to her date last insured.

On March 2, 2012, Dr. Corona saw Ms. James and noted that her chief complaint was neck ache and back pain. Dr. Corona noted tenderness in her neck, but recorded that she had full

range of motion. [#10-7 at 253]. That same month, during a March 23, 2012 visit with Dr. Corona, Plaintiff complained of neck pain which had "gotten worse recently" and told Dr. Corona that she "feels she is unable to work anymore because of the pain in her neck." [#10-7 at 142]. Dr. Corona noted at that time that she would like to have disability forms filled out. [#10-7 at 142]. A March 2012 MRI showed no abnormal signal within the spinal cord; mild disc desiccation; minimal diffuse disc bulge and facet arthropathy; and no significant narrowing of the spinal canal overall. [#10-7 at 156].

In January 2013, treating physiatrist Hans Coester, M.D., reported that Plaintiff had neck and back pain, which felt better after manual traction. [#10-7 at 204-205]. Dr. Coester stated that although Ms. James had a history of neck pain since *2013*, "[i]n the last year she had worsening pain." [#10-7 at 204]. He opined that, while it was possible that surgery might help her, "she should exhaust conservative care first," including two weeks of physical therapy, a home traction device, exercise, and, if necessary, steroid injections. [#10-7 at 205].

The next month, in February 2013, Greg Reichhardt, M.D., agreed with Dr. Coester's recommendation that Plaintiff should receive only physical therapy. [#10-7 at 203]. He noted that if Plaintiff had an "incomplete response" with physical therapy, she could then try trigger point injections, wrist splints, and, contingent on the outcome of the more conservative measures, foraminal injections for diagnostic purposes and consideration of surgery. [#10-7 at 203]. Dr. Reichhardt also reported that Plaintiff had normal gait, balance, and coordination; normal heel-to-toe walking; full strength throughout (except for some weakness in the left wrist extensor); intact sensation; normal rapid alternating movements; and some tenderness to palpation. [#10-7 at 202].

On March 8, 2013, Dr. Corona issued a medical opinion regarding Ms. James' physical ability to do work-related activities. [#10-7 at 233]. Dr. Corona opined that Ms. James had the maximum ability to lift and carry less than 10 pounds on an occasional or frequent basis, a maximum ability to stand and walk for less than 2 hours in an 8-hour day, and a maximum ability to sit for about 3 hours in a an 8-hour day. [#10-7 at 233]. The ALJ discounted this opinion because there was no evidence in the opinion to suggest that the limitations it contained could be inferred back to the relevant period and the opinion was not supported by Dr. Corona's treatment notes or by the evidence of the record as a whole during the relevant period.

The record also reflects an April 1, 2013 appointment with physiatrist Dr. Greg Reichhardt, in which Dr. Reichhardt opined that Ms. James suffers from chronic neck pain and arm numbness. [#10-7 at 164]. Plaintiff asserts that it is significant that Dr. Reichhardt opined that Ms. James' limitations began 12 years before the date of his exam and progressively worsened; however, the record reflects that Dr. Reichhardt did not have a treating relationship with Ms. James at any time during the relevant period, he only began treating Ms. James several years after her date last insured, and his reporting regarding the gradual onset of Ms. James' neck and back problems was based solely on self-reporting by Ms. James. *See, e.g.*, [#10-7 at 200]; *see also* [#10-2 at 17]. The court disagrees with Plaintiff's assertion that the ALJ's discounting of Dr. Reichhardt's opinion was an improper substitution of the ALJ's lay opinion for the opinion of a medical professional. To the contrary, where substantial record evidence in the relevant timeframe contradicted Dr. Reichhardt's opinion rendered over two years later, the ALJ was not required to afford that opinion substantial weight. *See Allen v. Colvin*, No. 2:14-CV-904, 2015 WL 6510601, at *7 (D. Utah Oct. 28, 2015).

The record also contains an April 5, 2012 letter from Gary Sandau, the Chief of the Platteville/Gilcrest Fire Protection District, where Ms. James served as a volunteer fire fighter from 1992 to 2008. [#10-6 at 111]. Chief Sandau wrote that Ms. James' abilities began to fail in fall of 2007 and that by 2008, her back and neck problems became more of a deterrent in her ability to function as actively as she had in the past. [#10-6 at 111]. The ALJ considered Mr. Sandau's statement as evidence from "other source" which the ALJ noted that he was not required to receive or give weight to. [#10-2 at 18]. The ALJ noted that Mr. Sandau is not medically trained and has not seen Ms. James in any professional capacity, and that his statements are inconsistent with the evidence of record. [#10-2 at 18].

This court concludes that the ALJ properly discounted the medical evidence post-dating the disability eligibility period where that evidence cannot reasonably be tied to Ms. James' medically determinable impairments as they existed during the disability eligibility period. This court will not seek to reweigh the evidence where it finds that the ALJ applied the proper legal standards and reached conclusions that were supported by substantial evidence; however, the court notes that the record before it strongly suggests that while Ms. James suffered from back and neck pain dating back to 2003, her back and neck problems and the associated pain only worsened to the point where she persistently sought medical treatment and was unable to manage her pain and symptoms beginning in 2012, well after the December 31, 2010 date last insured. The court is satisfied that the ALJ applied the appropriate legal standard and that on the basis of the medical evidence in the record, there was substantial evidence supporting his conclusion that the record evidence does not establish that Ms. James possessed one or more severe impairments

during the *relevant* timeframe: June 15, 2009 through December 31, 2010. Accordingly, this court affirms the ALJ's determination below.

Because the court finds that the ALJ did not err in finding that none of Ms. James' impairments were "severe," the court will not address Plaintiff's arguments about whether the errors she alleges in this regard were "harmless."

## II.   The ALJ's Duty to Adequately Develop the Record

Plaintiff also argues that the ALJ erred by failing to adequately develop the record because the ALJ failed to inquire into Dr. Corona and Dr. Reichhardt's opinions and Ms. James' testimony regarding Ms. James' severe impairments during the relevant timeframe between the onset of her disability onset date and her last-insured date. [#13 at 19]. This court respectfully disagrees.

It is the Plaintiff's burden to prove that she is disabled. *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997). Nonetheless, the ALJ has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993) (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

Plaintiff's argument regarding the ALJ's duty to adequately develop the record relies on an incomplete assessment of the ALJ's opinion regarding the record evidence. In particular, each piece of evidence which Plaintiff argues the ALJ should have returned to and reconsidered or further investigated was not rejected solely on the basis that it was unclear to the ALJ whether that evidence applied to the relevant timeframe, but rather because the evidence directly conflicted other substantial record evidence. An ALJ's duty to develop the record is not

14

unqualified. *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009). Where, as here, the ALJ is able to assess that there are no severe impairments from the evidence in the record (in this case, in the relevant time period), nothing further is warranted. *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (rejecting a claimant's argument that the ALJ should have further developed the record regarding his pulmonary functioning where the ALJ's conclusions were consistent with the objective medical evidence); *see also Hawkins v. Chater*, 113 F.3d 1162, 1068 (10th Cir. 1997) ("The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment. The duty to develop the record is limited to fully and fairly developing the record as to material issues." (quotation and citation omitted)); *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (while the ALJ has a basic obligation to develop an adequate record during the administrative hearing, the ALJ's duty for claimants . . . which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning").

Plaintiff argues that the ALJ erred because he discounted Ms. James' hearing testimony on the basis that it reflected her current limitations, rather than the limitations that existed during the relevant timeframe, and that the ALJ should have asked her additional questions at the hearing to obtain testimony about her limitations during the relevant timeframe. *See* [#13 at 19]. The ALJ limited his hearing testimony to questions about Ms. James' current pain and ability to sit, stand, walk, and use her hands. *See* [#10-2 at 23-25]. The record does not reflect any questions by the ALJ regarding Ms. James' limitations as they existed in the timeframe relevant to her claim for disability. Nonetheless, this court finds that the ALJ's failure to develop the record in this regard is a harmless error because the ALJ's opinion reflects that he determined

that Ms. James' subjective complaints regarding her limitations were not supported by the record evidence pertaining to the relevant timeframe.  The ALJ found it inconsistent that Ms. James alleged a complete inability to work as of June 15, 2009, yet she sought a very minimal amount of treatment during the relevant time.  [#10-2 at 17].   The ALJ also found Ms. James' subjective complaints and alleged limitations to not be consistent with the objective examination reports prior to and during the relevant period.  [#10-2 at 17].  Accordingly, this court will not reverse the ALJ's opinion on the basis that he should have asked Ms. James additional questions during the hearing regarding her limitations during the relevant timeframe.

The ALJ discounted Dr. Reichhardt's opinion because there was no treatment relationship between Dr. Reichhardt and Ms. James at any time during the relevant period, he did not begin to treat Ms. James until at least three years after the relevant period, his statements were inconsistent with the medical evidence of record during the relevant period, and his statement that Ms. James' symptoms and limitations began twelve years ago and progressively worsened over time appeared to have been based only on Ms. James' self-report. [#10-2 at 17]. While it is improper for this court to attempt to reweigh the evidence in this regard, the court finds that the ALJ had ample basis for his conclusion that Dr. Reichhardt's opinion should be discounted, and there was no reason why the ALJ should have further inquired into it, particularly where the ALJ had already found that Dr. Reichhardt's opinion was inconsistent with substantial record evidence from the relevant timeframe.  The court finds no error regarding the ALJ's development of an adequate record surrounding Dr. Reichhardt's opinion.

Plaintiff also argues that the ALJ had a duty to re-contact Dr. Corona regarding a March 2013 medical opinion which the ALJ gave little weight to because the ALJ had found Dr.

16

Corona's opinions regarding Ms. James' limitations insufficient to identify when the limitations began. [#13 at 20]. The court respectfully disagrees with Plaintiff's interpretation of the ALJ's opinion. While the ALJ acknowledged that the March 2013 opinion post-dated the relevant period by over two years and there was no basis to suggest that the limitations it contained could be inferred back to the relevant period, the ALJ also discounted the opinion because it was not supported by Dr. Corona's own treatment notes or by the evidence of record as a whole during the relevant period. [#10-2 at 17]; *see* 20 C.F.R. §§ 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); 404.1527(c)(4) (stating an ALJ must consider consistency). Dr. Corona's treatment notes from before, during, and after the relevant time period, *see generally* [#10-7 at 237-265], demonstrated that Plaintiff did not have a severe impairment during the relevant time period. *See, e.g.*, [#10-7 at 152 (generally normal physical examination and "doing well"); #10-7 at 263 (normal physical examination)]. Where the ALJ found that the March 2013 opinion should be discounted because of its inconsistency with Dr. Corona's other opinions in the record and the evidence as a whole, this court sees no error by the ALJ in not re-contacting Dr. Corona to obtain further information about the March 2013 opinion. There is no indication that the ALJ found the record to be inadequate to determine Ms. James' disability, and Plaintiff has not established that such an inadequacy existed. *Cf. Borgsmiller v. Astrue*, 499 F. App'x 812, 815 (10th Cir. 2012); *see also* 20 C.F.R. § 404.1520b.

Finally, the court is also not persuaded by Plaintiff's argument that the ALJ should have arranged for a consultative physical examination of Ms. James or have had a medical expert review the complete medical record and offer an opinion as to functional capacity. "An ALJ is

17

obligated to order a consultative evaluation only when the medical sources on record are insufficient to allow the ALJ to make a disability determination." *Welch v. Colvin*, 566 F. App'x 691, 695 (10th Cir. 2014) (citing 20 C.F.R. § 404.1517).  In reviewing the record and the ALJ's determination, this court concludes that the medical records during the relevant time period between Ms. James' claimed onset date and the date of last insured do not suggest a severe impairment, and it is unclear a consultative evaluation performed a number of years beyond the relevant time period could establish Plaintiff's disability in this case.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. James was not disabled within the meaning of Title II of the Social Security Act and therefore not eligible to receive Disability Insurance Benefits.  Accordingly, **IT IS ORDERED** that the Commissioner's final decision is **AFFIRMED** and this civil action is **DISMISSED**, with each party to bear its own fees and costs.

DATED: March 11, 2016                                             BY THE COURT:

                                                                                          s/ Nina Y. Wang_____
                                                                                          United States Magistrate Judge